**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. RICHARD LEROY PARKER, Defendant. | No. 17-CR-1034-LRR **ORDER** |

_____

*TABLE OF CONTENTS*

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*
*II. RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . *2*
*III. STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
*IV. RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
*V. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *A. Factual Objections* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
        *1. "Two hours before"* . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
        *2. Sweating* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *3. Truck* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
    *B. Conclusions of Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *1. Seizure* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
        *2. Custody* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
        *3. Search warrant* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
            *a. Probable cause* . . . . . . . . . . . . . . . . . . . . . . . *13*
            *b. Good faith exception* . . . . . . . . . . . . . . . . . . . *14*
*VI. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

*I. INTRODUCTION*

The matters before the court are Defendant Richard Leroy Parker's Objections ("Defense Objections") (docket no. 58), Defendant's Pro Se Objections ("Pro Se Objections") (docket no. 58-2) and the government's Objections ("Government

Objections") (docket no. 59) to United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 47), which recommends that the court grant in part and deny in part Defendant's "Motion to Suppress Evidence" ("Motion") (docket no. 36).

## II. RELEVANT PROCEDURAL BACKGROUND

On August 24, 2017, a grand jury returned an Indictment (docket no. 2) charging Defendant with one count of distribution of a controlled substance near a protected location resulting in death in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), 851 and 860(a), and two counts of possession with intent to distribute a controlled substance near a protected location in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), 851 and 860(a). *See* Indictment at 1-4. On November 13, 2017, Defendant filed the Motion. On November 20, 2017, the government filed a Resistance (docket no. 43). On November 29, 2017, Judge Williams held a hearing on the Motion. *See* November 29, 2017 Minute Entry (docket no. 45). Defendant appeared in court with his attorney, Melanie Keiper. Assistant United States Attorney Dan Chatham represented the government. On December 6, 2017, Judge Williams issued the Report and Recommendation, which recommends that the court grant in part and deny in part the Motion. On December 20, 2017, Defendant filed the Defense Objections and the Pro Se Objections. On that same date, the government filed the Government Objections. The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must

"undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND[1]

On April 17, 2017, at approximately 12:30 a.m., officers from the Dubuque Police Department and paramedics arrived at a residence on Rhomberg Avenue (the "Rhomberg Residence") in response to a 911-call regarding an unresponsive woman. Attempts to resuscitate the woman, who was identified as E.M., were unsuccessful and she was later pronounced dead at the hospital. When officers first arrived at the scene, they gathered personal and contact information from Defendant, Ashley Ostrander and Donte Richards. Officers then questioned the individuals about E.M.'s history and her activities throughout the day. This questioning lasted between fifteen and twenty minutes. During this interaction, Defendant made several incriminating statements about his own drug use.

Officers remained at the Rhomberg Residence with Defendant, Ostrander and Richards until approximately 2:45 a.m. At that time, officers asked if any of the individuals would accompany them to the police station for further questioning. Defendant

---

[1] After reviewing the Hearing Transcript (docket no. 53), the court finds that Judge Williams accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 2-8. Therefore, the court shall only briefly summarize the facts here. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

3

agreed to accompany officers, and was transported to the police station. When Defendant arrived at the police station, he waived his constitutional rights and subsequently made incriminating statements in an interview conducted by Investigator David Randall. *See* Government Exhibit 8 (docket no. 46). Shortly after the interview, Defendant stated that he was having chest pains and shortness of breath. Paramedics transported Defendant to the hospital. Officers later arrested Defendant for a parole violation. On that same date, officers obtained a search warrant for Defendant and a residence on Garfield (the "Garfield Residence"). Officers conducted a search of the Garfield Residence and seized incriminating evidence.

## V. ANALYSIS

### A. *Factual Objections*[2]

Defendant objects to several of Judge Williams's factual findings. The court shall address each factual objection in turn.

#### 1. *"Two hours before"*

Defendant objects to Judge Williams's finding that "Defendant said [E.M.] had been drinking and took some cocaine about two hours before." Report and Recommendation at 4. Defendant contends that he stated "he saw the victim use cocaine 'earlier' and when pressed for a specific time, he said it was 'a couple hours ago.'" Brief in Support of Defense Objections (docket no. 58-1) at 1. Although Judge Williams's characterization of "about two hours before" is not a verbatim quote, the court finds that it accurately

---

[2] Defendant enumerates a number of "objections to the relevant facts and supplements the relevant facts from the record at the hearing." Brief in Support of Defense Objections at 1. Aside from what is addressed below, Defendant has not articulated specific objections to Judge Williams's factual findings. *See generally id.*; *see also* LCrR 59 ("A party in a criminal case . . . must file specific, written objections to the . . . report and recommendation . . . ."). Rather, Defendant lists a number of "supplemental" relevant facts from the record. As stated above, the court has conducted a de novo review of the record.

4

captures Defendant's statement. Therefore, the court shall overrule this factual objection.

### 2. *Sweating*

Defendant objects to Judge Williams's finding that, "[D]efendant was sweating while Officer Walker was talking to him." Report and Recommendation at 4. Defendant asserts that, rather, "water appears to have dripped down onto his bare chest" after he "drank out of the kitchen faucet." Brief in Support of Defense Objections at 1. Upon review of Exhibit 5, the court notes that no moisture was visible on Defendant's chest until after he drank out of the kitchen faucet. Thus, the court finds that the apparent perspiration was water that had dripped onto Defendant's chest. Therefore, the court shall sustain this factual objection.

### 3. *Truck*

Defendant objects to Judge Williams's finding that Defendant stated that "he had obtained a substance from his truck." Report and Recommendation at 7. Defendant argues that he stated "he obtained [a substance] from a truck." Brief in Support of Defense Objections at 2. After reviewing the testimony of Investigator Randall and Exhibit 7, the court finds that Defendant referred generically to "a" or "the" truck, and not "his" truck. *See* Hearing Transcript at 24; *see also* Exhibit 7. Therefore, the court shall sustain this factual objection.

## B. Conclusions of Law

Defendant objects to Judge Williams's legal conclusion that Defendant was not in custody while at the Rhomberg Residence. The government objects to Judge Williams's legal conclusion that the *Leon*[3] good faith exception to the exclusionary rule does not apply. The court shall address each objection in turn.

### 1. *Seizure*

Defendant objects to Judge Williams's conclusion that Defendant "was not seized

---

[3] *United States v. Leon*, 468 U.S. 897 (1984).

and therefore [was] not in custody" while officers questioned him at the Rhomberg Residence. *See* Brief in Support of Defense Objections at 3. Defendant argues that he was not free to leave the apartment, his movements were contained and his movements were directed by officers. *Id*. Defendant additionally asserts that officers engaged in deceptive tactics by not revealing E.M.'s death to him. *Id*.

The Fourth Amendment to the United States Constitution protects "against unreasonable searches and seizures." U.S. Const. amend. IV. "A police officer 'may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *United States v. Fields*, 832 F.3d 831, 834 (8th Cir. 2016) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). "For an investigative *Terry*-type seizure to be constitutional under the Fourth Amendment, an officer must be aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *United States v. Donnelly*, 475 F.3d 946, 952 (8th Cir. 2007) (quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983)). "A reviewing court must look at the totality of the circumstances, allowing 'officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

Defendant conceded at the hearing on the Motion that officers did not violate his constitutional rights by asking about E.M.'s drug usage. *See* Hearing Transcript at 28-29. Rather, Defendant contends that Officer Walker's inquiry into Defendant's own drug use was improper. *See id*. The court agrees with Judge Williams that E.M's "drug use cannot be so easily divorced from [D]efendant's drug use and activities." Report and Recommendation at 11. Initially, Officer Walker obtained Defendant's personal

6

information and asked him about E.M.'s history, health and activities earlier that day. It was not until Defendant informed officers that E.M. had used cocaine that Officer Walker asked Defendant about his own drug use. Defendant's statements regarding E.M.'s drug use permitted Officer Walker to expand the scope of the encounter to inquire about Defendant's drug use. *See United States v. Coleman*, 700 F.3d 329, 335 (8th Cir. 2012) ("If the officer develops reasonable suspicion that other criminal activity is afoot, the officer may expand the scope of the encounter to address that suspicion." (alteration omitted) (quoting *United States v. Peralez*, 526 F.3d 1115, 1120 (8th Cir. 2008))). Further, officers on the scene knew that Ostrander and Richards, who resided at the Rhomberg Residence, were crack users and also knew Richards was a crack dealer. *See* Hearing Transcript at 17; *see also United States v. Winters*, 491 F.3d 918, 921 (8th Cir. 2007) ("When a team of law enforcement officers is involved in an investigation, the issue is whether all of the information known to the team provided 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the investigative stop." (quoting *United States v. Robinson*, 119 F.3d 663, 666-67 (8th Cir. 1997))). The court finds that the information about E.M.'s drug use, particularly when coupled with the knowledge of the drug use of the other occupants at the residence, established reasonable suspicion that criminal activity may have been afoot.[4] Therefore, officers were authorized to conduct a *Terry* stop.

---

[4] Defendant asserts that Judge Williams's finding that officers had reasonable suspicion that criminal activity may be afoot was not supported by the record. *See* Pro Se Objections at 4. Defendant relies on Officer Walker's testimony that he did not arrest Defendant because "you can consume drugs, but if you don't have any on your person, there's nothing you can charge them with at that time." Hearing Transcript at 8. Defendant's argument conflates Officer Walker's determination that he did not have probable cause to arrest Defendant for using drugs, with the lesser standard of reasonable suspicion that is applicable here. Therefore, the court shall overrule Defendant's objection on this point.

### 2. *Custody*

Nor does the court find that the *Terry* stop evolved into a custodial arrest. "An investigative detention may turn into an arrest if it 'lasts for an unreasonably long time or if officers use unreasonable force.'" *Donnelly*, 475 F.3d at 953 (quoting *United States v. Navarrette-Barron*, 192 F.3d 786, 790 (8th Cir. 1999)). "The ultimate question in determining whether a person is in custody for purposes of *Miranda* is whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *United States v. Perrin*, 659 F.3d 718, 719 (8th Cir. 2011) (quoting *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004)); *see United States v. Giboney*, 863 F.3d 1022, 1027 (8th Cir. 2017) ("The Fifth Amendment requires that *Miranda* warnings be given when a person is interrogated by law enforcement after being taken into custody."). "To determine whether a suspect was in custody, we ask 'whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave.'" *United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016) (quoting *United States v. Vinton*, 631 F.3d 476, 481 (8th Cir. 2011)). Relevant factors include:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990). These factors are not exhaustive. *Giboney*, 863 F.3d at 1027.

The first factor is "whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest." *Griffin*, 922 F.2d at 1349. During the encounter at the Rhomberg Residence, no officer informed Defendant that the questioning was voluntary or that he was free to leave the residence. Additionally, no officer informed Defendant that he was not under arrest. However, the absence of such statements by officers is not dispositive. At no point did Defendant state that he no longer wished to speak with officers nor did he attempt to leave the Rhomberg Residence.

Defendant argues that he was not free to leave the Rhomberg Residence because Corporal Bruce Deutsch testified that "[d]uring the initital part" of the investigation Defendant would not have been free to leave and "[d]uring the back half of the investigation [Corporal Deutsch] would have had to have cleared it with [his] supervisor." *See* Hearing Transcript at 21; *see also* Pro Se Objections at 8-9. However, there is no evidence that this potential restriction was ever communicated to Defendant. This fact is significant "because the 'in custody' inquiry focuses on 'objective circumstances, not on subjective views of the participants.'" *United States v. Castillo-Martinez*, 451 F. App'x 615, 619 (8th Cir. 2012) (quoting *United States v. Muhlenbruch*, 634 F.3d 987, 996 (8th Cir. 2011)); *see also Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) ("A policeman's unarticulated plan has no bearing on the question [of] whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his situation."). One officer's belief that Defendant would not have been free to leave, which was not communicated to Defendant, does not render the encounter custodial. Therefore, the court finds that this factor does not weigh in favor of finding that Defendant was in custody.

The second factor is "whether the suspect possessed unrestrained freedom of movement during questioning." *Griffin*, 922 F.2d at 1349. When officers arrived at the

9

Rhomberg Residence, Defendant generally moved throughout the apartment as he wished. Officer Walker accompanied Defendant as he moved throughout the apartment and, within a few minutes, asked Defendant to "just kind of stay here."[5] Report and Recommendation at 4. Officer Walker subsequently asked Defendant to step outside to talk. The court does not find that Officer Walker's statements, or that he accompanied Defendant throughout the residence, restrained Defendant to a degree associated with a formal arrest. *See Giboney*, 863 F.3d at 1028 (concluding that the defendant was not deprived of freedom of movement by the officer "merely . . . joining [the defendant] as he moved about and outside the house").

Further, paramedics were providing medical aid to E.M. in the bedroom and kitchen. Officers needed to restrict some movement of the occupants so as not to impede resuscitation efforts or disrupt the scene. *See id*. (concluding that the defendant was not in custody when law enforcement "explained to [the defendant] that he could not 'just take off and walk around the house' because of the ongoing execution of the search warrant"). Nor did officers attempt to physically restrain Defendant or prevent his exit. *See Laurita*, 821 F.3d at 1024 (concluding that the defendants' freedom of movement was not restrained to "the degree associated with formal arrest" (quoting *United States v. Williams*, 760 F.3d 811, 815 (8th Cir. 2014))); *Perrin*, 659 F.3d at 721 (finding that the defendant was not in custody where neither officer "prevented [the defendant] from exercising his right to leave—they did not physically restrain him, and nothing . . . suggests that they positioned

---

[5] Defendant argues that he was seized when Officer Walker told him to "just kind of stay here." *See* Pro Se Objections at 6. As addressed above, the court has already concluded that Officer Walker had reasonable suspicion to support a *Terry* stop. However, to the extent that Defendant relies on Sixth Circuit case law to argue that "words alone may be enough to make a reasonable person feel that he would not be free to leave," *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004), the court does not find that Officer Walker's words were sufficient to transform the encounter into a custodial arrest.

10

themselves or acted to inhibit [the defendant's] exit"). Therefore, the court finds that this factor does not weigh in favor of finding that Defendant was in custody.

The third factor is "whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions." *Griffin*, 922 F.2d at 1349. Defendant contends that he did not initiate contact with authorities by calling 911. *See* Pro Se Objections at 3. The court agrees with Judge Williams's conclusion that this contention "belies common sense." Report and Recommendation at 11. A reasonable person would understand that by calling 911 officers would respond to the scene. *See, e.g.*, *United States v. Ruhl*, No. 16-CR-0331, 2017 WL 2711416, *2 (D. Minn. June 23, 2017) (concluding that the defendant "initiated contact with authorities by calling 911 when he found an adult male unresponsive in his hotel room"). Therefore, the court finds that this factor does not weigh in favor of finding that Defendant was not in custody.

The fourth factor is "whether strong arm tactics or deceptive stratagems were employed during questioning." *Griffin*, 922 F.2d at 1349. Defendant argues that officers "engage[d] in deceptive tactics by not revealing [E.M.'s] death when asked about it." Brief in Support of Defense Objections at 3. Defendant points to no evidence in the record supporting the claim that officers intentionally withheld information about E.M.'s death from Defendant in order to manipulate him. Specifically, the court finds no evidence that Officer Walker was aware that E.M. had died at the time Defendant made the initial incriminating statements. Further, to the extent that officers at the residence withheld this knowledge from Defendant, it was not sufficient to render the encounter custodial. Therefore, the court finds that this factor does not weigh in favor of finding that Defendant was in custody.

The fifth factor is "whether the atmosphere of the questioning was police dominated." *Griffin*, 922 F.2d at 1349. Defendant argues that the atmosphere was police dominated because there were at least four uniformed officers at the Rhomberg Residence

and flashing police lights. *See* Pro Se Objections at 9. Although a number of officers were present at the scene, several were providing emergency medical assistance. Additionally, at the time Defendant made the incriminating statements he was only interacting with Officer Walker. *See United States v. Axsom*, 289 F.3d 496, 502 (8th Cir. 2002) (concluding that the interview was not police dominated where, although nine federal agents were present in the suspect's home, only two agents conducted the interview). Further, the interaction took place at the Rhomberg Residence, rather than in a police dominated environment. *See United States v. Sanchez*, 676 F.3d 627, 631 (8th Cir. 2012) (finding that the interview was police dominated where "[i]t was held in a courthouse-basement office normally used by federal prosecutors" and the defendant "was isolated with two law enforcement officers in the small, closed interview room"). Therefore, the court finds that this factor does not weigh in favor of finding that Defendant was in custody.

Defendant does not object to Judge Williams's finding that the "officers did not arrest [D]efendant at the conclusion of the questioning." Report and Recommendation at 13; *see Griffin*, 922 F.2d at 1349. Therefore, the court finds that this factors weighs in favor of finding that Defendant was not in custody.

In light of the above factors, the court finds that Defendant was not in custody while he was at the Rhomberg Residence. *See Williams*, 760 F.3d at 815 (concluding that "the conduct of the interview did not bring about a restraint on freedom of movement of the degree associated with formal arrest. [The defendant] was not physically restrained or handcuffed. He was permitted to get a glass of water and to move unsupervised through his home. [The defendant] was questioned by only a single agent for a relatively short period of thirty to forty-five minutes. The agent used no deceptive strategies or threats. At the end of the interview, [the defendant] was not arrested" (internal citation omitted)).

### 3. Search warrant

The government objects to Judge Williams's legal conclusion that the *Leon* good faith exception to the exclusionary rule does not apply to the officers' search of the Garfield Residence.

#### a. Probable cause

"Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances." *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016) (quoting *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007)). "If an affidavit in support of a search warrant 'sets forth sufficient facts to lead a prudent person to believe that there is a "fair probability that contraband or evidence of a crime will be found in a particular place,"' probable cause to issue the warrant has been established." *Id.* (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). In determining whether probable cause exists, courts "apply a common sense approach . . . considering all relevant circumstances." *United States v. Hager*, 710 F.3d 830, 836 (8th Cir. 2013) (quoting *United States v. Gleich*, 397 F.3d 608, 612 (8th Cir. 2005)). A reviewing court must "pay 'great deference' to the probable cause determinations of the issuing judge or magistrate, and limit [its] inquiry to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed." *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). "When the [issuing judge] relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014) (alteration in original) (quoting *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)).

No party objects to Judge Williams's conclusion that the search warrant lacked probable cause to search the Garfield Residence because it lacked "facts connecting [Defendant] to that residence." Report and Recommendation at 20. For the reasons more

fully stated in the Report and Recommendation, the court finds that the search warrant lacked probable cause as to Defendant's residence.

### b. *Good faith exception*

The court now turns to the question of whether, despite the search warrant's invalidity, the evidence obtained as a result of its execution should be excepted from the exclusionary rule under the *Leon* good faith exception. The government objects to Judge Williams's finding that the good faith exception does not apply to the search of the Garfield Residence because "the search was so facially deficient that . . . [no] police officer could reasonably believe it established probable cause to search the [Garfield Residence]." Report and Recommendation at 21. The government asserts that the good faith exception to the exclusionary rule applies, and that the evidence obtained pursuant to the search warrant should not be suppressed. *See* Government Objections at 3-7.

Evidence obtained pursuant to a search warrant that is later determined to be invalid is excepted from the exclusionary rule "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Rodriguez*, 834 F.3d 937, 941 (8th Cir. 2016) (quoting *Leon*, 468 U.S. at 920). Courts give "'great deference' to a magistrate's determination" that probable cause existed to issue a warrant. *Leon*, 468 U.S. at 914 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013) (quoting *Leon*, 468 U.S. at 926). The following circumstances preclude a finding that officers acted in objective good faith in executing a warrant:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his

> judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Hopkins*, 824 F.3d 726, 733 (8th Cir. 2016) (quoting *Cannon*, 703 F.3d at 412).

At issue here, is whether "the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id*. "The court must look at the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant." *United States v. Conant*, 799 F.3d 1195, 1201-02 (8th Cir. 2015) (quoting *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015)). The court "looks to the totality of the circumstances in assessing the objective reasonableness of an officer's execution of a warrant, 'including any information known to the officer but not presented to the issuing judge.'" *Id*. at 1202 (quoting *Jackson*, 784 F.3d at 1231).

The court agrees with Judge Williams's conclusion that no "police officer could reasonably believe [that the warrant] established probable cause to search" the Garfield Residence. Report and Recommendation at 21. In this case, the search warrant affidavit contained nothing linking the Garfield Residence with Defendant. Because the affidavit lacks any factual basis linking the Garfield Residence to Defendant, a reasonably well trained officer would have known that the search was illegal. Thus, the good faith exception does not apply. *Compare United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988) (concluding that the good faith exception was inapplicable where the affidavit "d[id] not link th[e] location to the defendant") *with United States v. Murphy*, 69 F.3d 237, 240-41 (8th Cir. 1995) (distinguishing *Hove*, where "the officer's final affidavit for the search warrant did not contain any information linking [the defendant] . . . to the residence to be

searched" from the present case, where "the affidavit stated that a confidential informant had told [an officer] that [the defendant] . . . possessed firearms at his home" and provided the defendant's specific address). *See United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007) (rejecting the defendant's argument that "the affidavit was so lacking in indicia of probable cause to render [the officer's] reliance on it unreasonable" because "the affidavit attached to the warrant . . . established a connection between the defendant . . . and the place to be searched"); *United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005) ("For good faith to exist, there must be *some* factual basis connecting the place to be searched to the defendant or suspected criminal activity. When this connection is wholly absent, the affidavit and resulting warrant are 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' Exclusion is appropriate in such circumstances because 'reasonably well-trained' officers, exercising their own professional judgment, will be able to recognize the deficiency." (internal citation omitted) (quoting *Leon*, 468 U.S. at 923)); *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) (concluding "that the executing officers reasonably relied on the issuing judge's determination that there was probable cause" where "the affidavit established a connection between [the defendant] and the [place to be searched]"); *see also United States v. Johnson*, 332 F. Supp. 2d 35, 39 (D.D.C. 2004) (finding the good faith exception did not apply because the affidavit "was so deficient that a reasonable officer's belief in the existence of probable cause was unreasonable" where "[t]he affidavit insufficiently linked the suspect . . . with the place to be searched" and "failed to state that . . . anyone . . . actually told the officer that [the suspect] lived there or had stayed there").

The government emphasizes the court's ability to look at what officers knew, but did not include in the affidavit when assessing good faith reliance. The government points to Investigator David Welsh's testimony that "he knew, and that it was 'common knowledge' to law enforcement, that the Garfield [R]esidence was [D]efendant's

16

residence." Government Objections at 6. However, Investigator Welsh's testimony was decidedly more equivocal. *See* Hearing Transcript at 4 ("I think at a certain point . . . that it was common knowledge, that's where he lived."). Further, the requisite analysis focuses on the knowledge of the officer that executed the search warrant. *See Jackson*, 784 F.3d at 1232 (examining whether "the actions of the deputy in executing the search warrant were taken in objectively reasonable good faith considering the deputy's knowledge and actions"); *Guzman*, 507 F.3d at 685 (examining "the objective reasonableness of the officers who executed [the] warrant"). Although Investigator Welsh may have known that Defendant resided at the Garfield Residence, he testified that he did not bring the search warrant to the Garfield Residence and that he "d[id not] remember who went to Garfield to search it." Hearing Transcript at 5. Additionally, no evidence was presented establishing who executed the search warrant and whether they had knowledge that the Garfield Residence was Defendant's residence. Because there is no evidence as to which officer executed the search warrant and what that officer knew, the court is unable to conclude that the executing officer's knowledge supports a finding of good faith. Therefore, the court shall overrule this objection.

## *VI. CONCLUSION*

In light of the foregoing, the court **ORDERS**:

(1) The Defense Objections (docket no. 58) are **OVERRULED IN PART** and **SUSTAINED IN PART**;

(2) The Pro Se Objections (docket no. 58-2) are **OVERRULED**;

(3) The Government Objections (docket no. 59) are **OVERRULED**;

(4) The Report and Recommendation (docket no. 47) is **ADOPTED IN PART** and **MODIFIED IN PART**; and

(5) The Motion to Suppress (docket no. 36) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

**DATED** this 9th day of January, 2018.

                                          LINDA R. READE, JUDGE
                                          UNITED STATES DISTRICT COURT
                                          NORTHERN DISTRICT OF IOWA