# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 17-CR-1034-LRR |
| vs. | **ORDER** |
| RICHARD LEROY PARKER, | |
| Defendant. | |

## I. INTRODUCTION

The matter before the court is Defendant Richard Leroy Parker's "Motion for Hearing on Miscarriage of Justice/to Reconsider Suppression Ruling" ("Motion") (docket no. 163) asking the court to reconsider its January 9, 2018 Order ("Order") (docket no. 94), which adopted in part and modified in part United States Chief Magistrate Judge C.J. Williams's Report and Recommendation (docket no. 47) and granted in part and denied in part Defendant's "Motion to Suppress Evidence" ("Motion to Suppress") (docket no. 36).

## II. RELEVANT PROCEDURAL HISTORY

On August 24, 2017, a grand jury returned an Indictment (docket no. 2) against Defendant. Count 1 charged Defendant with distribution of a controlled substance near a protected location resulting in death, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 851 and 860(a), and Count 2 charged Defendant with possession with intent to distribute a controlled substance near a protected location, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 851 and 860(a). *See*

Indictment at 1-3.[1] On November 13, 2017, Defendant filed the Motion to Suppress. On December 6, 2017, Judge Williams issued the Report and Recommendation, which recommended that the court grant in part and deny in part the Motion to Suppress. On January 9, 2018, the court issued the Order.

On January 16, 2018, a jury trial commenced. *See* January 16, 2018 Minute Entry (docket no. 116). On January 18, 2018, the jury found Defendant guilty of Counts 1 and 2 of the Indictment. *See* Jury Verdicts (docket no. 124). On June 26, 2018, Defendant filed the Motion. On July 19, 2018, the government filed a Resistance (docket no. 168). On July 30, 2018, Defendant filed a Reply (docket no. 169). Defendant requests a hearing on the Motion, but the court finds that a hearing is unnecessary. The matter is fully submitted and ready for decision.

### III. RELEVANT FACTUAL BACKGROUND

On April 16, 2017, Defendant and E.M. spent the day at the residence of Ashley Ostrander and Donte Richards, mutual friends. Shortly after midnight, Defendant called 911 to report that E.M., his girlfriend, was unresponsive and not breathing. Officers from the Dubuque Police Department and paramedics arrived at the residence. Officers knew from previous encounters that Ostrander and Richards were crack users and that Richards was a crack dealer. As paramedics attempted to revive E.M., officers spoke with Defendant, Ostrander and Richards. Officer Matthew Walker spoke with Defendant, and their conversation was recorded on his body camera.

Officer Walker spoke calmly and casually to Defendant, gathering basic information about Defendant and the circumstances that led to his finding E.M. not breathing. Defendant was cooperative and provided the requested information, but repeatedly

---

[1] Count 3 of the Indictment charged Defendant with possession with intent to distribute a controlled substance near a protected location, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 851 and 860(a). *See* Indictment at 3-4. The court dismissed Count 3 prior to trial. *See* January 12, 2018 Order (docket no. 101).

2

wandered back and forth throughout the residence during the conversation. After the fourth time Defendant turned and walked into a different room, Officer Walker asked Defendant to remain in place, stating, "I just gotta talk to you, so kind of just stay here." Defendant stood still momentarily to answer Officer Walker's next question, but then again walked away towards a different room. Officer Walker followed, and asked Defendant whether E.M. had consumed anything illegal that day. Defendant turned around and answered while walking into another room, telling Officer Walker as he went that E.M. had been using narcotics earlier in the evening. At that point, Officer Walked ask Defendant to come with him to the rear of the residence, where Defendant was questioned and made incriminating statements.

## IV. ANALYSIS

In the Motion Suppress, Defendant claimed that he was unlawfully seized without probable cause when officers questioned him at the rear of the residence, and that he was subjected to a custodial interrogation without being read his *Miranda* rights. *See* Brief in Support of Motion to Suppress (docket no. 36-1) at 3-7. Defendant argued that the court, therefore, was required to suppress his incriminating statements to law enforcement. *See id*. at 7. In the Order, the court found that Defendant was not subjected to a custodial arrest, and that, therefore, no suppression was warranted. *See* Order at 8-12. Rather, the court found that the questioning at the rear of the residence was a lawful *Terry* stop. *See id*. at 7; *see also Terry v. Ohio*, 392 U.S. 1, 20-22 (1968) (authorizing law enforcement to temporarily detain an individual for an investigatory stop based on reasonable suspicion that criminal activity has been, is being or is about to be committed). The court found that "the information about E.M.'s drug use, particularly when coupled with the knowledge of the drug use of the other occupants at the residence, established reasonable suspicion that criminal activity may have been afoot." Order at 7.

Defendant now argues that he was subjected to a *Terry* stop earlier in the encounter,

3

when Officer Walker told him to "just kind of stay here." *See* Motion at 7. Defendant points out that Officer Walker told Defendant to "just kind of stay here" before he asked Defendant about E.M.'s drug use.[2] *See id*. at 5. Defendant argues that without the information about E.M.'s drug use, Officer Walker lacked reasonable suspicion for a *Terry* stop. *See id*. at 10-11. Defendant further argues that the information about E.M.'s drug use must be suppressed, and that the court must, therefore, reverse its decision in the Order and suppress all statements Defendant made to law enforcement. Upon consideration, for the following reasons, the court shall not reverse its decision in the Order.

### *A. Seizure*

Defendant argues that "Officer Walker seized . . . Defendant by ordering . . . Defendant to stop walking, and [saying] 'just stay here'" in order to ask him questions. *Id*. at 3 (emphasis omitted). However, "mere police questioning does not constitute a seizure." *United States v. Barry*, 394 F.3d 1070, 1074 (8th Cir. 2005) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). The relevant inquiry is whether "the questioning is 'so intimidating, threatening, or coercive that a reasonable person would not have believed himself free to leave.'" *United States v. Flores-Sandoval*, 474 F.3d 1142, 1145 (8th Cir. 2007) (quoting *United States v. Hathcock*, 103 F.3d 715, 718 (8th Cir. 1997)).

"For an officer's behavior to rise to the level of a Fourth Amendment seizure, the officer must use 'physical force or [a] show of authority' to restrain a citizen's liberty." *United States v. Cook*, 842 F.3d 597, 600 (8th Cir. 2016) (alteration in original) (quoting

---

[2] In the Report and Recommendation, Judge Williams reversed the order of these two events in his findings of fact. *See* Report and Recommendation at 4. Defendant alleges that this was done intentionally and for some improper purpose. *See* Motion at 9-10. The court finds this allegation to be wholly without basis. The chronology of these two events was not germane to the issues presented in the Motion to Suppress, and the court finds that their transposition in the Report and Recommendation was a simple and genuine error.

4

*Terry*, 392 U.S. at 19 n.16). To determine whether a seizure has occurred, the court "examine[s] the totality of the circumstances, considering seven non-exclusive factors." *United States v. Garcia*, 888 F.3d 1004, 1009 (8th Cir. 2018). The seven factors the court considers are:

> [O]fficers positioning themselves in a way to limit the person's freedom of movement, the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is necessary, the officer's retention of the person's property, or an officer's indication the person is the focus of a particular investigation.

*Id*. (alteration in original) (quoting *United States v. Aquino*, 674 F.3d 918, 923 (8th Cir. 2012)).

In this case, five of the seven factors were wholly absent. Officer Walker did not position himself in a way that restricted Defendant's movement. Even after instructing Defendant to "just kind of stay here," Officer Walker remained with his back to the wall, allowing Defendant to move freely. The video from Officer Walker's body camera shows that he never displayed a weapon or physically touched Defendant. Officer Walker was not in possession of any of Defendant's personal property. Finally, Officer Walker never indicated to Defendant that he was the focus of an investigation. Indeed, Officer Walker's questions clearly demonstrated that he was investigating the circumstances that led to E.M. becoming unresponsive and was seeking information that would aid the paramedics. The absence of these five factors weighs toward a finding that Defendant was not seized. Additionally, although there were multiple officers in the residence, only Officer Walker was focused on Defendant. The other officers were speaking to the other residents or carrying out other tasks on the scene. This sixth factor, therefore, also weighs toward a finding that Defendant was not seized.

Defendant's argument rests entirely on the seventh factor, the use of language or intonation indicating compliance is necessary. Defendant argues that when Officer Walker

said, "I just gotta talk to you, so just kind of stay here," it constituted a "'show of authority' . . . [and] a reasonable person would not [have] felt free to decline the officer's request." Motion at 7. The court finds, however, that Officer Walker's intonation and word choice were such that a reasonable person would have felt free not to comply. Officer Walker spoke casually and colloquially with Defendant, indicating that he was requesting Defendant's assistance in gathering information. Officer Walker's tone was calm and friendly, conveying that his words were a request and not a command. *See United States v. Vera*, 457 F.3d 831, 835 (8th Cir. 2006) (finding that the same words from an officer may be a request or command based on the officer's demeanor). Indeed, Defendant did not comply with Officer Walker's request, but instead continued to move throughout the residence. The court finds that, in the totality of the circumstances, a reasonable person in Defendant's position would have felt free to leave, and that, therefore, Defendant was not seized.

Even if Officer Walker's words constituted a show of authority, however, Defendant was still not seized because he failed to submit to that show of authority. A seizure "requires either physical force . . . or, where that is absent, submission to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (emphasis omitted). Evidence obtained while a defendant is fleeing, resisting or otherwise failing to comply with a show of authority, even if that show of authority was unlawful, is not subject to suppression. *See id.* at 629. In this case, Defendant did not submit when Officer Walker told him to "just kind of stay here." Instead, Defendant continued to walk away from Officer Walker and move throughout the residence. Therefore, Defendant was not seized when he told Officer Walker about E.M.'s drug use. Accordingly, the statement was not the product of an unlawful seizure and is not subject to suppression.

### B. Reasonable Suspicion

Even if Defendant were seized when he told Officer Walker about E.M.'s drug use,

the court finds that the seizure would have been a lawful *Terry* stop supported by reasonable suspicion. "For an investigative *Terry*-type seizure to be constitutional under the Fourth Amendment, an officer must be aware of 'particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'" *United States v. Donnelly*, 475 F.3d 946, 952 (8th Cir. 2007) (quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir. 1983)). "A reviewing court must look at the totality of the circumstances, allowing 'officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

In this case, officers knew that E.M. was unresponsive and not breathing based on Defendant's 911 call. They knew that E.M. had no apparent injuries or other visible indicators that would explain her condition. They also knew that Ostrander and Richards were frequent narcotics users, and that Richards was a known narcotics seller. In the totality of the circumstances, therefore, officers were reasonable in their suspicion that E.M. might have been using illegal narcotics. Officer Walker, therefore, was justified in conducting a brief investigatory stop of Defendant to determine whether illegal drug activity was taking place at the residence. *See United States v. Sokolow*, 490 U.S. 1, 9 (1989) (noting that evidence need not be "conclusive," but merely "sufficient to warrant consideration"). Accordingly, even if Defendant were seized when Officer Walker told him to "just kind of stay here," that seizure was lawful and does not warrant suppression.

## V. CONCLUSION

In light of the foregoing, Motion (docket no. 163) is **DENIED**.

**IT IS SO ORDERED**.

**DATED** this 29th day of August, 2018.

                                              LINDA R. READE, JUDGE
                                              UNITED STATES DISTRICT COURT
                                              NORTHERN DISTRICT OF IOWA